# Exhibit 1

Affirmation

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| CARVER FEDERAL SAVINGS BANK,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK BEACH CLUB, LTD., OCEAN BLVD., LLC, ALEXANDER V. JACOBSON, NEW YORK STATE DEPARTMENT OF LABOR, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ANO "JOHN DOE" #1 THROUGH "JOHN DOE" #IO, THE LAST TEN (10) DEFENDANTS BEING FICTITIOUS, REAL NAMES BEING UNKNOWN, THE PARTIES INTENDED.BEING PERSONS OR ENTITIES HAVING ANY RIGHT; TITLE OR INTEREST IN, OR LIEN UPON, OR TENANTS OR PERSONS IN POSSESSION OF PORTIONS OF THE MORTGAGED PROPERTY DESCRIBED IN THE COMPLAINT,·<br><br>Defendants. | INDEX NO.<br>**605303/2024**<br><br>**AFFIRMATION of<br>ALEXANDER JACOBSON** |

I, Alexander Jacobson affirm this 25ᵗʰ day of January, 2026, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

1.      I am one of the Beach Club Principal defendants in this case. I am fully familiar with the facts. I make this affirmation in support of the Defendants' application pursuant to CPLR §2221(d) and CPLR §6301, to renew the prior argument and for modification of the Court's Order granting the Receiver certain powers. I have read the supporting attorney affirmation of Charles Wallshein Esq.. I repeat and reiterate the statements of fact contained therein as if fully set forth herein.

2.      Defendants respectfully request that the Court amend said order appointing the receiver to limit the powers of the receiver to specifically exclude any actions taken by the Receiver to seize and or sequester the security deposits held by the Beach Club on behalf of its prospective

1

members and seeking injunctive relief staying the Receiver from enforcement of the this Court's order entered on January 15, 2026.[NYSCEF Doc.No.300].

3.     I have been running the Beach Club as its sole proprietor for the last decade. I have made improvements and upgrades to the Club facilities totaling in the millions of dollars. I have doubled the membership in the last decade. Unfortunately, unexpected expenses from a January 2024 flood combined with the Plaintiff not reimbursing the Club for the out-of-pocket expenses from the insurance proceeds. This created a financial bottleneck that the Club could not cure. I firmly believe that if Carver had not withheld the insurance proceeds and reimbursed the Club for its repairs the foreclosure would have been cured and this foreclosure action would never have had to be commenced.

4.     I have demonstrated that I am a responsible manger and that I am dedicated to the membership. The history of the case demonstrates that I ran the club from 2016 to the present and that this season despite the litigation I winterized the premises in observance of the contractual covenant to protect and keep the property in good repair. I believe that my conduct entitles me to an inference that I have no intention of hurting the members.

5.     The Club has secured a source of funds wherein Carver will be paid off.  I believe that the closing will occur by early March, 2026.

6.     The business model under which the Club operates is that the next years' membership deposits are used to pay the expenses to prepare the club for opening. As of the date of this application the Club is still winterized. The Club opens on Memorial Day. The Club does not start the de-winterization and opening process until mid-March.

7.     If Club cannot open for the 2026 season the Club is bound to refund the prospective members' 2026 deposits. This is a separate contractual issue between the prospective 2026 members with deposits and the Club. This issue has nothing to do with Carver Bank and its mortgage. We believe that the club will open for the 2026 season

8.     Moreover, if the deposits are seized and sequestered this will guarantee that the club will not reopen. The Plaintiff alone believes that I am trying to steal the membership deposits and that the Club will not reopen for the 2026 season. I believe that the Court's directive to have the receiver sequester the security deposits has done more harm and will do more harm than good. I believe that the Court is well meaning in issuing what is a prophylactic directive to

2

attach bank accounts that will never be attachable by Carver under a final money judgment if one issued.

9.     I am a member of the Atlantic Beach – 5 Towns, West Hempstead community. I have operated the Club in a responsible and lawful manner for the last decade. Nonetheless, I am being painted as a probable villain and thief by the Plaintiff. The timing of the sequestration demand is so close to the date at which the Club will have to use the deposit money to open for the season that the process of having the money returned to the Club by the receiver will have to be immediate. Carver has provided no assurances that it will not move for further relief.

10.     This is a specialty property. With all due respect to Michael Sepe, the Receiver does not have the experience to operate a Beach Club. The Club simply has to open. Without the ability to use the membership deposits that cannot happen. If the Club does not open Carver will be left with a non-income producing property that will deteriorate and essentially go to waste.

11.     This affirmation illustrates the irreparable economic harm to the Beach Club Defendants and to the business if the Court does not amend its order.

12.     Last, there is a real threat that the Court will hold me in contempt. The penalty for contempt could be incarceration and fines. I respectfully submit that incarceration and fines constitute irreparable harm for which injunctive relief is the only remedy. The equitable argument in favor of amending the Court's order and limiting the powers of the Receiver notwithstanding, the argument at law clearly states that, at this juncture, the Court does not have jurisdiction over the membership deposits. None of the membership deposits being held by the Club could ever be used to satisfy a money judgment to Carver as a matter of law.

13.     The Beach Club entities and me individually respectfully ask this Court to consider the equitable argument in favor of amending the order and amending the Temporary Receiver's powers. The Club is not seeking permanent relief in this application. It is seeking more time to secure the capital injection and to repay the debt with Carver.

WHEREFORE, Defendants New York Beach Club, Ltd., Ocean Blvd., LLC, Alexander V. Jacobson respectfully request that Pursuant to CPLR §2221(d), and CPLR §6301 that the Court

3

Case 8-26-70576-las Doc 27-2 Filed 02/23/26 Entered 02/23/26 16:21:31

grant Defendants, New York Beach Club, Ltd., Ocean Blvd., LLC and Alexander V. Jacobson, instant application by order to show cause to renew the Defendants' opposition to the Court's order as applied by the Receiver, Michael Sepe, Esq. and that the Court amend said order appointing the receiver to limit the powers of the receiver to specifically exclude any actions taken by the Receiver to seize and or sequester the security deposits held by the Beach Club and seeking injunctive relief staying the enforcement of the this Court's order entered on January 15, 2026.[NYSCEF Doc.No.300], together with such other and further relief as the Court deems just, equitable and proper.

Dated: January 24, 2026

_Alexander Jacobson individually and_
_As Principal for the Beach Club Defendants_

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| CARVER FEDERAL SAVINGS BANK,<br><br>          Plaintiff,<br><br>     v.<br><br>NEW YORK BEACH CLUB, LTD., OCEAN BLVD., LLC, ALEXANDER V. JACOBSON, NEW YORK STATE DEPARTMENT OF LABOR, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ANO "JOHN DOE" #1 THROUGH "JOHN DOE" #IO, THE LAST TEN (10) DEFENDANTS BEING FICTITIOUS, REAL NAMES BEING UNKNOWN, THE PARTIES INTENDED.BEING PERSONS OR ENTITIES HAVING ANY RIGHT; TITLE OR INTEREST IN, OR LIEN UPON, OR TENANTS OR PERSONS IN POSSESSION OF PORTIONS OF THE MORTGAGED PROPERTY DESCRIBED IN THE COMPLAINT,·<br><br>          Defendants. | INDEX NO.<br>**605303/2024**<br><br><br>**AFFIRMATION and MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S ORDER TO SHOW CAUSE** |

CHARLES WALLSHEIN, ESQ., an attorney duly admitted to the practice of law in the State of New York, hereby affirms the following under penalties of perjury pursuant to CPLR 2106:

1. I represent Defendants New York Beach Club, Ltd., Ocean Blvd., LLC, Alexander V. Jacobson [hereinafter "Beach Club"] in the above captioned matter.

2. This is a commercial foreclosure action of two loans, Loan A and Loan B, each of which is defined below (collectively, the "Loans"), the underlying mortgages of which encumber both the fee interest and leasehold interest in the subject real property located at 1751 Ocean Boulevard, Atlantic Beach, New York 11509 (the "Mortgaged Property"). Ocean is the owner and holder of the fee interest and NYBC (collectively with Ocean, the "Borrowers") is the holder of the leasehold interest therein. Carver commenced this action by filing a Summons and Complaint on March 26, 2024.

3. The Court granted summary judgment to the Plaintiff. Plaintiff moved to appoint a receiver NYSCEF Doc.No.244-268, Defendant Opposed Plaintiff's application, [see NYSCEF

1

Doc.No.271-278]. The Court ordered the appointment of a temporary receiver. Oral Argument was had on the motion on December 18, 2025. The Transcript of the proceedings appear at NYSCEF Doc.No. 296, [See also, Order Appointing Receiver NYSCEF Doc.No.297, Oath 298, and the Undertaking/Bond 299].

4. The Court added the prospective members as necessary party "tenants" in its decision that granted summary judgment to the Plaintiff. [See NYSCEF Doc.No.175].

5. Pursuant to CPLR §2221(d) and CPLR §6301, Defendants New York Beach Club, Ltd., Ocean Blvd., LLC and Alexander V. Jacobson bring the instant application by order to show cause to renew the Defendants' opposition to the Court's order as applied by the Receiver, Michael Sepe, Esq. and requesting that the Court amend said order appointing the receiver to limit the powers of the receiver to specifically exclude any actions taken by the Receiver to seize and or sequester the security deposits held by the Beach Club and seeking injunctive relief staying the enforcement of the this Court's order entered on January 15, 2026.[NYSCEF Doc.No.300].

6. As of January 30, 2026, the following accounts of the Defendants have been frozen by the Receiver, Michael Sepe.

    a. New York Beach Club Ltd.. (JPMorgan Chase Bank, Account No. XXX-9173), New York Beach Club Ltd., Platinum Bus Checking, (JPMorgan Chase Bank, Account No. XXX-7987), Ocean Blvd. LLC, (JPMorgan Chase Bank, Account No. XXX-9613), Alexander Jacobson Personal (JPMorgan Chase Bank, Account No. XXX-6297).

7. A court may appoint a receiver while litigation is ongoing to preserve and protect assets that are the subject of the dispute. The Court can justify sequestration and levy of the accounts only if there is evidence that the defendant is actively hiding records, mismanaging a company, or dissipating assets to avoid a potential future judgment. Here, there is no proof that the assets that have been seized are the subject of the dispute, nor is there evidence that the Defendant is dissipating assets.

8. For the purpose of establishing the basis for injunctive relief the Defendants distinguish the bank accounts that are seized into three classes. First, the Receiver has the best argument in its entitlement to the sequestration of the operating accounts of New York Beach Club Ltd.. (JPMorgan Chase Bank, Account No. XXX-9173), New York Beach Club Ltd., Platinum Bus

2

Case 8-26-70576-las Doc 27-2 Filed 02/23/26 Entered 02/23/26 16:21:31

Checking, (JPMorgan Chase Bank, Account No. XXX-7987), Ocean Blvd. LLC, (JPMorgan Chase Bank, Account No. XXX-9613).

9. The Receiver has no authority to sequester Alexander Jacobson's personal bank accounts. (JPMorgan Chase Bank, Account No. XXX-6297). At no time has any of the Beach Club operating money been comingled with my personal bank accounts. At no time has the prospective depositors' money been comingled with my personal bank accounts. Most importantly the Receiver has not demonstrated justification for sequestering my personal accounts.

10. Defendants bring the instant application for injunctive relief to have the levy removed from the above referenced accounts and released to the Defendants. The basis for the application is that the funds that are frozen are not part of the estate that could be reached by the Plaintiff-Creditor, Carver Bank and second, that the Receiver's actions are unlawful as a pre-judgment injunction that violates the Trust Fund doctrine.

11. Second, a general creditor has no legally recognized interest in or right to interfere with the use of the unencumbered property of a debtor prior to obtaining judgment. The Receiver cannot enforce any right of the creditor that exceeds the creditors' contractual rights. Here, the Receiver has used the Court order as a prejudgment attachment mechanism of asset that are not encumbered by the mortgage loan and security agreement.

12. Plaintiff moved for judgment of foreclosure and sale NYSCEF Doc.No.280]. There is no decision on the Plaintiff's motion for Judgment of Foreclosure and sale as of the date of this application.

13. The order appoints Michael Sepe Esq. as receiver. The order authorizes the temporary receiver to seize and hold the 2026 membership deposits for the Beach Club that are presently being held in an account by the Beach Club pending further order of the court.

14. Defendants submit that the injunctive relief authorizing the sequestration of the deposit account is both unwarranted and outside the scope of the Court's authority. The Court's order states:

> "ORDERED, that the said Receiver be and he hereby is directed to demand, collect and receive from occupants, tenants, and licensees in possession of said premises or others liable therefore, inclusive of the mortgagor, all the rents and license fees thereof to become fixed and now due and unpaid, or prepaid including deposits, and hereafter to become due and that said Receiver be and he hereby is authorized to institute and carry on all legal proceedings necessary for the protection of said premises or to recover possession of the

3

whole, or any part thereof, and /or apply to the Court to fix reasonable rental values and license fee values to compel the tenants and occupants(s) to attorn to the Receiver; and it is further. . . "

15. The Court orders injunctive relief wherein the Beach Club is directed to turnover membership deposits for the 2026 season that begins on or about Memorial Day 2026. The order requires the Receiver to take possession of the Beach Club's advance membership deposits for safekeeping to ensure that the Beach Club does not abscond with the money. The Beach Club Defendants have not turned over the money to the receiver and bring the instant application to reverse the Trial Court's order so that the Beach Club Defendants are not held in contempt. The Court has expressed to the parties that it may hold Alex Jacobson in contempt and have him arrested for failure to comply with the Referee's directives to turn over the deposits pursuant to the Court's order.

16. The record reflects that the Plaintiff and the Receiver seek to seize the membership deposits and to hold the Club's principal in contempt for failing to do so. The Receiver declared Alexander Jacobson in contempt of the Court's order by letter dated January 19, 2026. See NYSCEF Doc.No.303].

17. This application seeks injunctive relief because the Court has threatened, on the record, to turn the matter over to the State Attorney and or the US Attorney and to bring a contempt proceeding against Jacobson if he failed to turn over the future membership deposits to [a] the Receiver, Michael Sepe Esq. It is undisputed that the Court's order ordering turnover of the membership deposits concerns money only. [See Transcript, Doc.No.296, page 10].

18. The injunctive remedy the Court seeks to impose is unavailable as a matter of law. The Court cannot impose pre-judgment injunctive restraint on assets held by the Defendant for the benefit of others. The Court is untrustworthy of the Defendant to act as a fiduciary of he prospective members of the 2026 season and is unlawfully invoking its equitable powers under the *Trust Fund Doctrine*.

19. Second, The Beach Club submits that the Lower Court exceeded its authority where it entered an order ordering the receiver to attach and to sequester assets that are outside the scope of the contract. It is undisputed that the membership deposits are neither real nor personal property that is encumbered by the mortgage and security agreement. Defendants further submit that the membership deposits are not assets but liabilities subject to refund.

4

20. Third, none of the purported creditors have intervened or appeared in this action seeking relief of any kind. The parties were added so the Court would have jurisdiction over the prospective members and the membership deposits. The Court acquired jurisdiction over the members by adding the members as persons who will be affected by a judgment. The Court held that the members are necessary parties to the action.

21. There is no claim by any prospective member with advance deposits against the Defendants in this action. Moreover, the members do not hold an interest in real property as "tenants". As members of the Beach Club, the membership has contractual rights to enter and use the premises. The club members have no rights in the real property and their rights will not be affected by the foreclosure. See *459 Washington Avenue LLC, v. Atkins* 230 A.D.3d 1282 (2nd Dep't 2024).

22. Defendants submit that the members would have no remedy against the club at equity for any action concerning real property as tenants pursuant to RPAPL Article 7, or as owners of real property. The only remedies the members could pursue absent the Beach Club is for a money judgment at law.

23. The Defendant does not suggest that the sale of the property through foreclosure absolves the Club of having to provide refunds to the depositors if the Club does not open. The members would be in the exact position they would otherwise find themselves if the Club did not open in May 2026 for any other reason other than the foreclosure.

        a. <u>The Court's Has No Authority to Temporarily Restrain Assets That Are Outside the Scope of the Litigation.</u>

24. The fact that the Court is acting with noble intentions and is trying to protect people who have tendered to the Club advance membership deposits from losing their money is of no moment. This is not the first occasion where a Court seeks to invoke its equitable powers in this manner. Here, the Court articulates the reasons necessary for the receiver's appointment. [See Transcript of Proceedings p.13]. Nonetheless, the Court does not have the authority to render judgment concerning monies that are outside the scope of the litigation and the underlying contract. All persons with membership deposits have a remedy at law for refunds if they deem it necessary to demand same. Moreover, if the membership deposits are not used for the intended purpose, to wit, securing cabana space and the rental of equipment, the members have an action at law against the Club.

Case 8-26-70576-las    Doc 27-2    Filed 02/23/26    Entered 02/23/26 16:21:31

25. The Court believes that final judgment of sale is imminent and that the Beach Club is not going to open for the 2026 season. [See Transcript of Proceedings, December 18, 2025, NYSCEF Doc.No.296, page 13]. The Court believes that the Defendant is going to abscond with the membership deposits. The Defendants respectfully submit that there is nothing in the record to support the imminent and irreparable harm component to the Court's order.

26. The relevant contract provision states:

1.6 "Closing" means the closing of the Loan. "Collateral" shall mean all of each Debtor's assets, now owned and hereafter acquired, including, but not limited to, all of the following assets, property, interests and/or rights of each Debtor, whether now owned or existing or hereafter created, acquired or arising and where ever located: **(a) all gross receipts** from the operation of each Debtor's business; (b) **all accounts** (including health care insurance receivables) **and all other forms of obligations owing to any Debtor arising out of the Property and/or the sale, lease, license or assignment of goods or other property;** (c) **all chattel paper** (whether tangible or electronic); (d) **all commercial tort claims**; (e) **all computer hardware** and software and all rights with respect thereto, including, without limitation, any and all licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications, and any substitutions, replacements, additions or model conversions of any of the foregoing; (f) **all deposit accounts, including, without limitation, the Ocean Blvd Operating Account and the NYBC Operating Account;** (g) **all documents** (including electronic documents); (h) **all general intangibles** (including all payment intangibles and software); (i) **all goods** (including inventory, equipment, furniture, fixtures and any and all accessions, additions, attachments, improvements, substitutions and replacements thereto and therefore); (j) **all instruments** (including promissory notes); (k) **all inventory**; (l) **all letter-of-credit rights** (whether or not the letter of credit is evidenced by a writing); (m) **all securities, investment property, and other financial assets, including, without limitation, certificated securities,** uncertificated securities, and security entitlements; (n) **all supporting obligations**; (o) **all money and any other contract rights or rights to the payment of money, all insurance and insurance claims and proceeds;** (p) all fees, charges, accounts or other payments for the use or occupancy of any room or rooms and other public facilities in hotels, inns, motels or other lodging at the Property, whether presently existing or arising in the future, to which any Debtor may now or hereafter become entitled or may demand or claim; (q) **all personal property and fixtures of every kind and nature,** and (r) all other assets of each Debtor, together with all products and proceeds of all of the foregoing. [emphasis added].

27. The collateral secured as described in paragraph numbered 1.6 of the amended security agreement is an exhaustive list that is inclusive of the property owned by the Defendant and all intangibles that are owned by the Defendant, now and future. The Court refers to the beach club members as "tenants". [See Transcript of Proceedings, December 18, 2025, NYSCEF Doc.No.296, pages 6-7]. Defendant disagrees with the Court's characterization of the beach

club members as tenants and further disagrees with the characterization of the monies held by the Defendant as rents.

### b. The Beach Club Members' Deposits are Not Rents and are Therefore Outside the Scope of the Litigation

28. Although the Court has never directly addressed the nexus between the contract provisions that identify the collateral subject to the security agreement, the Court feels the need to protect and the prospective membership deposits for the 2026 season held by the Defendant in a segregated deposit account.

29. As a threshold matter, Pursuant to the Court of Appeals holding in *Credit Agricole Indosuez v. Rossiskiy Kredit Bank,* 94 N.Y.2d 541 (2000), this Court cannot use the order appointing the receiver as a seizure mechanism to seize the Club members' deposits. This objection compounds Defendants' first objection, to wit, that the membership deposits are not encumbered by the contract. See also, *Grupo Mexicano de Desarrollo v. Alliance Bond Fund,* 527 U.S. 308, (1999). In *Credit Agricole* the Court held;

> " the substantive rule of equity which, as has been shown here, has prevailed for over two centuries, from Chancellor Kent through *Campbell v. Ernest* to *Grupo Mexicano,* that a general creditor has no legally recognized interest in or right to interfere with the use of the unencumbered property of a debtor prior to obtaining judgment. Therefore, during the pendency of the action on the debt, even if the anticipated judgment might include permanent injunctive relief, the acts of the debtor in disposing of assets will not have "produce[d] [cognizable] injury to the plaintiff" and thus will not support a temporary injunction (CPLR 6301).

30. The creditor, Carver Bank, does not have an interest in the that property and under these particular set of facts, Carver Bank could not seek prejudgment attachment of the membership deposits pursuant to CPLR Article 52.

31. The prospective members with deposits for the 2026 season do not have an interest in the real property. The membership agreement is not a lease for an interest in real property as defined by what rights the membership agreement confers to the member. It is undisputed that the members do not reside at the Club. The members do not have exclusive use of an identified part of the club. Arguably, the members are licensees with the right to enter the club facility and to use the facility and its equipment for approximately three months.

32. Irrespective of what the agreement is called, the relationship between he member and the Beach Club is defined by the rights the agreement confers. See, *Senrow Concessions, Inc., v.*

7

*Shelton Properties, Inc.*, 10 N.Y.2d 320 (1961); See also, *Greenwood Lake & Port Jervis R. R. Co. v. New York & Greenwood Lake R. R. Co.,* 134 N.Y. 435, (1892).

33.     In *Senrow*, the Court held;

> [But] it would be unfair and unsafe to come to so drastic a conclusion without a full exploration of the facts including the intent of the parties.

34.     The Beach Club respectfully submits that core to the relief and the provisional remedies sought by the Plaintiff and the Receiver is the nature of the relationship between the prospective member-depositors and the Beach Club. Defendant further submits that if the Plaintiff cannot attach the deposits post judgment to satisfy its anticipated judgment then ordering the Receiver to sequester the deposits is beyond the scope of the provisional remedies lawfully available.

c.     <u>Neither the Plaintiff Nor the Receiver Have Standing to Represent the Depositors' Interests</u>.

35.     Neither the Plaintiff nor the Receiver have standing to represent the depositors' interests. Moreover, The Plaintiff has not demonstrated and the record does not contain evidence supporting irreparable harm to the foreclosure estate. It is the Plaintiff's burden to show cause for injunctive relief sufficient to compel the Court to order that the debtor is in contempt for its refusal to comply with the Receiver's demands to turn over the deposits.

36.     Here, the Plaintiff has no cognizable interest in the deposits. The only point at which any party would have a cognizable claim against the Defendant's assets is after a deficiency judgment if any. The Court cannot seek to protect the prospective members from losing their deposits because the members are not obligors bound by the loan agreement. Nor are the members guarantors of the loan agreement.

37.     Conversely, the Court's order and the Referee's posture create an emergency for the Defendant that can only be remedied by this Court's order staying the Receiver from taking any further action to enforce the Court's Order directing the Defendant to surrender the deposits and the threat from the Receiver to move for contempt require the Defendants to bring the instant application to prevent the sequestration of the deposits and to stay the proceeding for contempt.

38.     The Receiver may point to CPLR §5201 and *Hotel 71 Mezz Lender LLC v. Falor,* 14 N.Y.3d 303 (2010) as supporting authority to sustain the Court's order as prejudgment

8

Case 8-26-70576-las   Doc 27-2   Filed 02/23/26   Entered 02/23/26 16:21:31

attachment. *Hotel 71* is distinguishable because in that case enforcement was against a contract guarantor who was a nondomiciliary defendant. The prejudgment attachment order was against property owned by the guarantor. Moreover, the prejudgment attachment order was used to gain jurisdiction over the assets because the guarantor was a nondomiciliary and the assets were outside the jurisdiction. This is permitted under CPLR §6201.

39. Here the property being seized is not property owned by the guarantor and cannot be used to satisfy a judgment of foreclosure. Nor can the funds be used to satisfy a deficiency if any. CPLR §6201 is therefore inapplicable until and unless a party who is a prospective member-depositor becomes a third party plaintiff and demands relief under said section.

40. The prospective members are not suing to recover their deposits. Nonetheless, the Court is using its equitable powers via injunctive relief to protect deposits that have nothing to do with this case. As mentioned above, the *Trust Fund Doctrine* is being used by the Court to impose liability on Jacobson for wrongful dissipation of assets of an insolvent beach club.

41. The trust fund doctrine has traditionally been applied in actions later brought by court-appointed receivers, trustees in bankruptcy or judgment creditors (*see, New York Credit Men's Adj. Bur. v. Weiss, supra; Buttles v. Smith,* 281 N.Y. 226,; *Trotter v. Lisman,* 209 N.Y. 174,

42. With respect to the possible application of the trust fund doctrine in the context of this case, the Court, on behalf of the nominal party depositors, may not invoke the doctrine to reach transferred assets before bringing their own actions against the Club and Jacobsen and then obtaining judgment on the debt and having execution returned unsatisfied. This is especially true since there is not a single court action wherein a depositor is seeking a refund of a deposit much less a judgment to enforce upon.

43. In *612 Wortman LLC v. Varsity Bus Co., Inc*. 137 A.D.3d 1251 (2nd Dep't 2016) the Court held;

> "[A] simple contract creditor may not invoke the [trust fund] doctrine to reach transferred assets before exhausting legal remedies by obtaining judgment on the debt and having execution returned unsatisfied"

44. Here, the Court seeks to enjoin the Beach Club's use of the depositor's money. It is undisputed that the Plaintiff, Carver Bank, has no security interest or claim against the deposits as part of the foreclosure estate or as an encumbered asset.

    d. <u>The Defendant Will Suffer Irreparable Harm if he is held in Contempt of the Court's Order</u>

9

45.     It is beyond cavil that being held in contempt and being threatened with incarceration constitutes irreparable harm. This is especially true where the underlying Order from which the enforcement and contempt orders derive are unlawful.

46.     Irreparable harm may be presumed where a person's rights are violated. Although the Court has not issued an order holding the Beach Club and Jacobson in contempt the Receiver's letter of January 19 certainly creates an inference that the Receiver's application for same is imminent.

47.     The issue before the Court is whether the Beach Club Defendants and specifically Alexander Jacobson can enjoin the Plaintiff and its Receiver from enforcing what is in substance an injunction on the possession of the membership deposits.

48.     At the moment of this application, Alexander Jacobson is being threatened with a warrant for arrest. The fact that the threat of incarceration is incrementally short of immediate should be of no moment. One element that is considered when seeking injunctive relief is the amount of notice the party seeking the injunction has before that person seeks the relief.

49.     CPLR §6301 states that to obtain a temporary restraining order ("TRO") it is plaintiffs' burden to demonstrate (1) irreparable injury absent the grant of the TRO; (2) likelihood of success on the merits; and (3) that the balance of equities lies in plaintiffs' favor and outweighs the public interest.

50.     Here, Jacobson believes that it is better not to wait until he is held in contempt to seek injunctive relief against the Receiver. He makes the application now to put all parties on notice that there is an objection to the Court's order based upon the law and the absence of a complete record to support the underlying order.

51.     The instant application does not seek to block a prospective or speculative harm. The Court has numerous occasions expressed its concern that the deposits are at risk. The Defendants submit that the Court's order intends to achieve an injunctive and prophylactic remedy where there is no evidence supporting the need for prejudgment asset seizure.

WHEREFORE, Defendants New York Beach Club, Ltd., Ocean Blvd., LLC, Alexander V. Jacobson respectfully request that Pursuant to CPLR §2221(d), and CPLR §6301 that the Court grant Defendants, New York Beach Club, Ltd., Ocean Blvd., LLC and Alexander V. Jacobson,

10

**FILED: NASSAU COUNTY CLERK 02/02/2026 02:16 PM** INDEX NO. 605303/2024

NYSCEF DOC. NO. 310                                          RECEIVED NYSCEF: 02/02/2026

instant application by order to show cause to renew the Defendants' opposition to the Court's order as applied by the Receiver, Michael Sepe, Esq. and that the Court amend said order appointing the receiver to limit the powers of the receiver to specifically exclude any actions taken by the Receiver to seize and or sequester the security deposits held by the Beach Club and seeking injunctive relief staying the enforcement of the this Court's order entered on January 15, 2026.[NYSCEF Doc.No.300], together with such other and further relief as the Court deems just, equitable and proper.

Dated: January 24, 2026                    ___/S/_____
      Melville, NY                          Charles Wallshein Esq.
                                      *Counsel for Beach Club Defendants*

11