Richard J. McCord, Esq.
Robert D. Nosek, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Debtors and Debtors in Possession
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

NEW YORK BEACH CLUB, LTD.

                    Debtor.
------------------------------------------------------------X

In re:

OCEAN BLVD, LLC,

                    Debtor.
------------------------------------------------------------X

Chapter 11

Case No.:8-26-70576-las

Chapter 11

Case No. 8-26-70577-las

## DEBTORS' EMERGENCY OBJECTION TO *EX PARTE* APPLICATION OF 1751 OCEAN LLC FOR THE ENTRY OF AN ORDER, PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016, DIRECTING THE EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY THE DEBTORS

New York Beach Club Ltd ("NYBC") and Ocean Blvd LLC ("Ocean") (NYBC and Ocean, together, the "Debtors"), the above-captioned debtors and debtors in possession, by their counsel, Certilman Balin Adler & Hyman, LLP, respectfully submits this emergency objection to an *Ex Parte Application of 1751 Ocean LLC for the Entry of an Order, Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, Directing the Examination of and Production of Documents by the Debtors* [26-70576 ECF Dkt. No. 114; 26-70577 ECF Dkt. No. 81] (the "Rule 2004 Application") filed by 1751 Ocean, LLC (the "Lender"), and requests a hearing on the Rule

1

10055670.1

2004 Application with a reasonable period of time in which to file a more fulsome objection to the Motion, respectfully represent as follows:

1. On February 10, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition for relief pursuant to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. Alexander Jacobson ("Jacobson") is the 100% owner of both of the Debtors and is the person that oversaw and managed the successful reopening process for the 2026 beach club season.

3. Prior to the Petition Date, the Debtors entered into two loans with Carver on or about March 31, 2022 (the "Loans").

4. On March 5, 2026, Carver sold its Loans to the Lender.

5. The Lender filed the Rule 2004 Application more than three (3) months after it bought its way into this case.

6. The Lender is seeking this relief at this time solely to interfere with Jacobson's ability to run the Debtors beach club operations in an effort to derail the reorganization of the Debtors.

7. The Lender cites various reasons why the Rule 2004 Application should be granted at this time;

> First, it asserts that the timing of the bankruptcy case filings "raises substantial questions regarding whether the Debtors filed in good faith or primarily to evade the consequences of pre-petition contempt proceedings in a pending foreclosure action. Mot. ¶ 27.
>
> Second, the Lender asserts the Debtors may have made allegedly improper transfers within six (6) years preceding the Petition Date which may be avoidable, and that examination of the Debtors is necessary for investigation over the existence of such claims, and the "potential

2

10055670.1

prosecution of avoidance claims belonging to the Debtors' estates." Mot. ¶ 28.

Third, the Lender states that it has a direct interest in, among other things, "the whereabouts and disposition of Membership Funds collected from Beach Club Members" and "the Debtors' ability to propose and confirm a feasible plan of reorganization." Mot. ¶ 29.

Fourth, the Lender makes assertions about the Debtors possibly having guaranteed third party debt, and "may have failed to disclose the existence of such guarantees to Carver in connection with the origination of the loans now held by the Lender." Mot. ¶ 30

Fifth, Lender argues that the Debtors and Jacobson's alleged behavior in the pre-petition "heightens the risk that estate assets and records may be concealed, dissipated, are left unpreserved, and underscores the need for prompt examination and document production to protect the interests of the estate and their creditors." Mot. ¶ 31.

8. The Lender's three-month delay destroys its arguments that the Rule 2004 Application should be granted on the basis of a possible bad faith filing or the need for a "prompt examination and document production." The Lender has actively participated in these cases from the moment it bought the Loans to the extent that has entered into several agreements and consent orders with the Debtors and the Receiver, and is now receiving payments from Ocean Blvd. It is too late for the Lender to argue a bad faith filing. Moreover, Lender has been the recipient of a substantial amount of the Debtor's operating books and records, at least involving the 2025 and 2026 seasons. Included in those productions by the Debtors are no less than eleven (11) months of all of the Debtors' bank statements, when they were included in the productions to the Receiver. There is also no evidence that the Debtors have destroyed documents or are hiding documents. Multiple productions have occurred during the past three months with the Lender receiving such documents.

9. On that point and addressing its supposed need to investigate the Debtors collection and use of Membership Funds, the Receiver is already close to issuing his report on the collection

3

10055670.1

and use of the 2026 Membership Fees, which was his charge, not the Lender. And the Lender has been privy to all of the documents provided to the Receiver.

10.    As for the ability to propose a feasible plan, the Debtors were just granted an extension of exclusivity and are actively working on such plans. The Lender is attempting to distract prematurely Jacobson's focus on that task.

11.    Furthermore, the Lender is wildly oversecured with more than a 35% equity cushion just on Ocean Blvd. real property before factoring in the going concern value of NYBC.

12.    With regard to Newtek, the Lender should review its own loan files it obtained from Carver as part of its purchase as to what Carver did or did not know about Newtek, which pre-dated the Loans by almost a year.

13.    The time period is also excessive. Carver loaned more than $8,000,000 to the Debtors in March 2022. They would not have done so if the Debtors were insolvent or on the verge of insolvency. Moreover, insider preferences only go back one year from the Petition Date and Federal fraudulent conveyances only go back two years from that date. Also, New York State amended its debtor and creditor law effective for transfers after April 1, 2020 to a four year look back period. And, all of those provisions require a debtor to be insolvent, which test is measured by the value of assets over liabilities.

14.    The Debtors reserve the right to amend or supplement this Objection.

**WHEREFORE**, based upon the foregoing, the Rule 2004 Application should be denied without prejudice, or, in the alternative, the Debtors should be given the opportunity to make a more fulsome objection including with case cites and further examples of the Lender's bad faith

4

10055670.1

acts, with the Court scheduling a hearing on the Rule 2004 Application and granting such other and further relief as the Court may deem proper.

Dated: East Meadow, New York
      June 18, 2026

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Counsel to the Debtors and Debtors in Possession

By:      ____/s/Richard J. McCord_____
**RICHARD J. MCCORD, ESQ**
**Robert D. Nosek, Esq.**
90 Merrick Avenue
East Meadow, New York 11554
(516) 296-7000

10055670.1