**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Andrew S. Muller, Esq.
Christopher Palmieri, Esq.
Attorneys for 1751 Ocean LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

In re:                                                    Chapter 11
NEW YORK BEACH CLUB LTD.,                      Case No. 26-70576 (LAS)
                    Debtor.
---------------------------------------------------------------- X

In re:                                                    Chapter 11
OCEAN BLVD., LLC,                              Case No. 26-70577 (LAS)
                    Debtor.
---------------------------------------------------------------- X

**EMERGENCY REPLY IN FURTHER SUPPORT OF EX PARTE APPLICATION OF
1751 OCEAN LLC FOR THE ENTRY OF AN ORDER, PURSUANT TO FEDERAL
RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016, DIRECTING THE
EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY THE DEBTORS**

1751 Ocean LLC (the "Lender"), by and through its counsel, Kriss & Feuerstein LLP, as and for

its Emergency Reply in Further Support of Lender's ex parte application (the "Application") for

the entry of an Order, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), authorizing and directing the examination of and production

of documents by (i) Ocean Blvd., LLC ("Ocean") and (ii) New York Beach Club Ltd. ("NYBC",

and together with Ocean, collectively, the "Debtors"), of certain records and documents that are in

their possession, custody or control [NYBC ECF No. 114] [Ocean ECF No. 81], and in opposition

to the Debtors' Emergency Objection to the Application (the "Objection") [NYBC ECF No. 115]

[Ocean ECF No. 82], respectfully sets forth and represents as follows:

1.       By their Objection, the Debtors request a hearing on Lender's Application and time prior

thereto to file a more fulsome objection. The Debtors' request for such relief should be denied as

4931-0028-9720, v. 2

not necessary. The Objection raises no basis to deny or defer the relief sought; it offers only generalized assertions of delay and a self-serving valuation, none of which defeats the Lender's clear statutory entitlement to the examination and production requested.

2.      At the outset, it is beyond dispute that as the senior secured lender to both Debtors, Lender is a party in interest, pursuant to Bankruptcy Code § 1109(b), with a right to seek to examine, and require the production of documents from, the Debtors pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, concerning its past financial acts, transactions and affairs, the authority for which is previously laid out in Lender's Application. The scope of a Rule 2004 examination is broad, and properly extends to the acts, conduct, property, liabilities and financial condition of the Debtors and to any matter that may affect the administration of the Debtors' estates. Courts in this District routinely authorize such examinations upon a showing of good cause, which the Lender has amply demonstrated. The Debtors do not—and cannot—contend that the Lender lacks standing or that the subject matter of the examination is improper.

3.      As for the arguments raised by the Debtors in their Objection, they lack merit, and are addressed in turn below.

4.      There is no time limit or established period by when authorization for discovery under Rule 2004 must be made. Rule 2004 contains no statute of limitations, and the doctrine of laches has no application to a party in interest's exercise of its statutory right to examine the Debtors. It is true that soon after becoming involved in these cases, Lender cooperated with the Debtors to open the beach club business for the 2026 summer season. Lender did so only because it was in its best interests and in the best interests of all creditors and the prospective members of the beach club, many of whom voiced their opinion that they wanted the beach club to open. More importantly, Lender agreed to do so only under the circumstances that currently exist; with the Receiver

remaining in place, and in custody and control of the Debtors' finances, based upon his prior experience with the Debtors' principal. Far from constituting a waiver, the Lender's measured cooperation to permit the season to open—for the benefit of the estates and the membership—underscores the Lender's good faith and refutes any suggestion that the present Application is interposed to "derail" the Debtors' operations. The Lender brought this Application promptly after the information it developed over the course of the season confirmed that an examination is warranted.

5.      Having now experienced for the past three months how the Debtors' operations are managed by its principal Alex Jacobson ("Jacobson"), and with the beach club now open for the summer, Lender has determined that discovery about the Debtors' prior transactions and affairs is appropriate, given what Lender has learned in these cases:

• NYBC uses valet service to park the cars of its beach club members at a location owned by Boardwalk Empire LLC ("Boardwalk Empire"), which is another entity owned by Jacobson, but which never had a firm agreement for the privilege of parking on Boardwalk Empire's lot, and never paid Boardwalk Empire an established amount for said parking privileges. Jacobson caused Boardwalk Empire to default on its own mortgage loan in February 2024, had a default judgment entered in its lender's subsequently filed foreclosure action, and is at risk of losing title to said property prior to the summer of 2027 because a Motion to Confirm the Referee's Report and for Entry of a Judgment of Foreclosure and Sale is currently pending;

• NYBC may not have paid rent to Ocean in over two years as apparently evidenced by NYBC listing a claim for Ocean in its Schedules in the amount of $1.44 Million, the accuracy of which remains to be determined;

4931-0028-9720, v. 2

• Jacobson may not have revealed to Lender's assignor, Carver Federal Savings Bank, the fact that he previously caused their borrowers, NYBC and Ocean, to have potential liability as guarantors of a $5 Million mortgage loan made by Newtek Small Business Finance LLC ("Newtek") to New York Equestrian Center, Ltd. ("Equestrian") and Lakewood Ranch Estates, LLC ("Lakewood"), two other entities owned by Jacobson, resulting in a breach of Carver's loan documents at the moment of execution thereof;

• Jacobson caused Equestrian and Lakewood, as well as Jacobson Realty, Ltd. ("Jacobson Realty"), another entity owned by Jacobson, which was also a guarantor, to default on the Newtek mortgage loan in November 2024, resulting in the commencement of a foreclosure action by Newtek in which was entered a default judgment and Order of Reference;

• Lender has learned that from the 2026 membership dues, prior to those funds becoming "property" of NYBC (as they were deposits of prospective members for a summer season that had yet to be provided) Jacobson caused a portion of those funds to be paid to himself through Jacobson Realty for a management fee, and by other means, as well as to his wife. Other than the year before, and at a much lower sum, no such fees were previously paid which begs the question of why such amounts were paid given the existence of all of the mortgage defaults and the pending foreclosure actions.

Each of these matters concerns transfers to, or dealings with, Jacobson and entities he controls—classic insider transactions warranting examination. The Debtors' own Objection does not deny any of these facts; it asks only that the Lender be precluded from investigating them. That is precisely the relief Rule 2004 exists to prevent.

4931-0028-9720, v. 2

6.      Lender acknowledges that the Receiver is charged with investigating the pre-petition use of 2026 membership funds, and is waiting for his report on same. However, that has no impact on Lender's entitlement to discovery of financial documentation and information from the Debtors going farther back in time. The Receiver's charge is limited to the collection and use of the 2026 membership fees; it does not encompass the multi-year, insider-transfer, affiliate, and guaranty matters at the heart of the Application. Nor are the Debtors' prior productions a substitute for the discovery sought here. Those productions consisted of operating books and records furnished to the Receiver for the discrete purpose of operating the club during the 2026 season; they do not include the historical, pre-petition transactional records—including transfers among the Debtors and Jacobson's affiliates and the Newtek guaranty documents—that the Lender now seeks. The Lender's receipt of operating statements is not, and cannot be, a waiver of, or substitute for, targeted Rule 2004 discovery.

7.      The Debtors' assertion that the Lender is "wildly oversecured" with a "35% equity cushion" is both disputed and beside the point. The purported cushion rests entirely on the Debtors' own self-serving appraisal, which the Lender does not accept and intends to test through its own petition-date appraisal. In all events, a party in interest's right to a Rule 2004 examination does not turn on the size of its collateral cushion. The examination is directed at the existence and recovery of avoidance and other causes of action belonging to the estates—recoveries that would benefit all creditors—and not at the Lender's adequate protection. The Debtors' valuation arguments are therefore immaterial to the relief requested and, in any event, present fact issues that cannot be resolved on this Objection.

8.      The Debtors' contention that the requested look-back period is "excessive" conflates the substantive reach of particular avoidance statutes with the proper scope of pre-litigation discovery.

4931-0028-9720, v. 2

A Rule 2004 examination is an investigatory tool, and a party need not pre-establish the elements of a cause of action to obtain it. In any event, claims for actual-intent fraudulent transfer under New York Debtor and Creditor Law § 273 (formerly § 276) are subject to a six-year limitations period under CPLR 213(8), and the estates may assert such claims through Bankruptcy Code § 544(b). Transactions involving insiders—here, entities and family members controlled by Jacobson—warrant heightened scrutiny over a multi-year period, and documents predating the facially avoidable window are necessary to establish the Debtors' financial condition and solvency over time and the badges of fraud attending the challenged transfers. The requested period is neither excessive nor untethered to cognizable claims. To the extent the Debtors raise bona fide concerns regarding scope, those concerns are properly addressed through the meet-and-confer process, not by denial or delay of the Application.

9.      The only issue on an application for Rule 2004 discovery is whether discovery by the party requesting same is appropriate in the first place. Lender submits there is no question on that issue, and that for this reason, none of the relief sought by the Debtors in their Emergency Objection has merit. Furthermore, filing the objection raises the implication that there may be a reason other than as stated as to why the Debtor objects to the discovery that goes beyond the issue of the expense of the production. Indeed, the Debtors' reflexive resistance to an ordinary examination of their own financial affairs—and in particular of transfers to their own principal and his affiliates—only reinforces the need for the discovery, and is consistent with the documented pattern of non-cooperation and non-compliance with court orders that pervades these cases, including the Debtors' filing of these Chapter 11 cases on the very date set for Jacobson's contempt hearing. Any issues as to the scope of the discovery are more appropriately addressed to the party requesting

4931-0028-9720, v. 2

such discovery through meet and confer procedures. As such, there is no basis on which to delay entry of an Order authorizing the Rule 2004 discovery sought by Lender.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

4931-0028-9720, v. 2

WHEREFORE, Lender respectfully requests that this Court: (a) overrule the Debtors' Objection including their request for a hearing and time to file further opposition to the Application; (b) authorize and direct the Debtors to produce all responsive documents within fourteen (14) days of entry of the Order and in advance of the examination, and to appear for examination through their designated corporate representatives (including Jacobson as the Debtors' sole member and manager) on a date certain, with such examination and production to proceed upon notice and subpoena without the need for any further order of this Court; (c) provide that the Lender reserves its rights to seek further examinations and document production from Jacobson individually and from non-debtor affiliates, and to move to compel and for related relief, including on an expedited basis, in the event of non-compliance; (d) grant the Application in its entirety as requested; and (e) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
     June 25, 2026

KRISS & FEUERSTEIN LLP
By: /s/ Jerold C. Feuerstein
Jerold C. Feuerstein, Esq.
Andrew S. Muller, Esq.
Christopher Palmieri, Esq.
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Counsel for 1751 Ocean LLC

4931-0028-9720, v. 2