**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS COMBINED DISCLOSURE STATEMENT AND PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In Re:

|  |  |
|---|---|
|  | Chapter 11 |
| NEW YORK BEACH CLUB, LTD., | Case No. 8-26-70576-las |
|  |  |
| Debtor. |  |

-------------------------------------------------------------------X
In Re:

|  |  |
|---|---|
|  | Chapter 11 |
| OCEAN BLVD., LLC, | Case No. 8-26-70577-las |
|  |  |
| Debtor. |  |

-------------------------------------------------------------------X

## COMBINED DISCLOSURE STATEMENTS AND PLANS OF LIQUIDATION, DATED JULY 27, 2026

### Background

### A.     Description and History of the Debtors

New York Beach Club, Ltd. ("NYBC," or the "Operating Debtor") is a privately owned corporation organized under the laws of the State of New York and 100% owned by Alexander Jacobson ("Jacobson").  NYBC commenced this case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") by the filing of a voluntary petition on February 10, 2026 (the "Petition Date").  NYBC's business is the ownership of personal property used to maintain and operate a seasonal summer beach club on leased real property located at and known as 1751 Ocean Boulevard, Atlantic Beach, New York 11509 (the "Property").

Ocean Blvd., LLC ("Ocean Blvd," or the "Landlord Debtor," and collectively with NYBC, the "Debtors") is a privately owned limited liability company organized under the laws of the State of New York also 100% owned by Jacobson.  Ocean Blvd. commenced its case under Chapter 11 of the Bankruptcy Code by the filing of a voluntary petition on the Petition Date.  Ocean Blvd.'s case is a single asset real estate case as that term is defined in Section 101(51B) of the Bankruptcy Code.  Ocean Blvd. owns the Property which is leased by NYBC.

NYBC also utilizes under a written revocable short-term license (the "Parking Lease") the use of a nearby unimproved parcel of real property owned by an affiliate of the Debtors, Boardwalk Empire, LLC ("Boardwalk Empire") located at and known as 1815 Ocean Blvd, Ocean Boulevard,

1

10095412.1

Atlantic Beach, New York 11509 (the "Lot").  The existing term of the Parking Lease ends on September 7, 2026.

Throughout this case the Debtors preserved and enhanced a valuable, operating oceanfront business.  Confirmation of this Plan maximizes value, protects creditors, preserves jobs and memberships, and provides for payment of all allowed claims in full through an orderly sale or refinance.  Continued Chapter 11 supervision through the Effective Date of this Plan achieves materially better results than a forced liquidation under Chapter 7 of the Bankruptcy Code.

These cases involve a commercially viable income-producing Property on almost 8 acres of rare oceanfront property in Atlantic Beach, New York and an operating beach club business (collectively, the "Club").

The Club experienced financial distress following a catastrophic flood event in January 2024 during the Club's offseason.  The distress was materially exacerbated by the refusal of the Debtors' pre-petition lender, Carver Federal Savings Bank ("Carver") to release insurance proceeds necessary to restore the Property, ultimately leading to the commencement of a state court foreclosure action, *Carver Federal Savings Bank v. New York Beach Club, Ltd., Ocean Blvd., LLC, Alexander V. Jacobson, New York State Department of Labor, New York State Department of Taxation and Finance and "John Doe #1 Through "John Doe" #10*, Index. No. 605303/2024, pending in the Supreme Court of the State of New York, County of Nassau before the Honorable Jerome C. Murphy (the "Foreclosure Action") and the necessity of the Chapter 11 filings herein.  To date, those insurance proceeds have never been released or applied to the Debtors' loans on behalf of the Debtors despite all repairs having been made thereby preserving the value of the Debtors' respective physical assets.

The Debtors' filings were a direct result of the pending Foreclosure Action and to reorganize their respective debts.  On or about February 20, 2026, post-petition, 1751 Ocean, LLC (the "1751 Ocean") acquired Carver's loans (the "Loans") and is the Debtors' first lien and only secured creditor.  The Debtors dispute 1751 Ocean's calculation of amounts due whether for a payoff or reinstatement of the Loans.  The Debtors and 1751 Ocean are somewhere between a million and two million dollars apart currently.

As part of the Foreclosure Action, questions were raised concerning the collection of membership fees and deposits for the 2026 season, and accounting for the use of those collections.  The State Court appointed Michael Sepe, Esq. (the "Receiver") as a temporary receiver over the Assets and to investigate and report on the collection and use of monies collected by NYBC for the 2026 season.  By order of the Bankruptcy Court entered April 10, 2026 [ECF Dkt. No. 81], and thereafter continued currently through and including September 9, 2026, the Bankruptcy Court excused the Receiver from certain of the obligations required under Section 543(a) and (b) of the Bankruptcy Code leaving him in this case to control the collection and use of all revenues from the Assets, make ultimate management decisions, and undertake and conclude his review of the use of 2026 membership deposits and fully paid fees.  As of the filing of this Plan the Receiver has not yet concluded his review and issuance of a report.  The Receiver Order also provided for the hiring of a hospitality business manager service.  As of June 1, 2026, Polaris CRD LLC was hired by 1751 and the Receiver to serve in that role.

2

The Debtors' beach club originally opened for business in 1938 with cabanas and beach access available to members. Additional buildings were added in 1950 and 1962. The ocean-front Property contains a total land area of 7.43- acres to the high-water line and is improved with 17 cabana buildings (17,639 square feet), 5 locker buildings (1,764 square feet), an office building (887 square feet), a restaurant building (2,083 square feet), two pools and a basketball court. Alexander Jacobson ("Jacobson") acquired the Club in 2016 and has successfully run same since that time, the current financial difficulties notwithstanding.  At the time Jacobson acquired the Club it had approximately 550 members per season.  The membership for the current 2026 season is approximately 840 members.

The seasonal nature of beach clubs and the weather in New York require Club facilities to be winterized at the end of each season and restored to an operating state leading into the beginning of the next season.  Beach club seasons on Long Island typically run from Memorial Day weekend to Labor Day weekend.  The Club opening site preparations process generally commences in March and lasts approximately twelve weeks.  The winterizing process commences almost immediately after the close of the Club's season and includes site preservation, off-season planning, maintenance and improvements for next year's opening.  Jacobson is involved in the day-to-day operations of the Club during the summer season and also provides hands-on leadership and participation in the opening and closing and winterizing of the Club facilities and Property each year.

Separately, but not a cause of the Debtors' bankruptcy filings, both of the Debtors are defendants in an action commenced by Newtek Small Business Finance LLC ("Newtek") seeking to enforce its rights under a loan (the "Newtek Loan") to non-debtor affiliates of the Debtors in which the Debtors are included as defendants because of pre-petition guarantees of the Newtek Loan.  The Debtors oppose and object to Newtek's assertion that either of the Debtors are obligated under the Newtek Loan with the Debtors asserted, among other defenses, any guaranty obligations were or were supposed to be released by Newtek as part of the Debtors closing on the Carver Loan.  The Debtors intend to vigorously and expeditiously oppose and challenge Newtek's claims against them.

NYBC successfully opened the 2026 beach club season on time and under budget.  With August 1, 2026, right around the corner NYBC is gearing up to begin soliciting and taking deposits on memberships for the 2027 season on August 1, 2026.  That process is undertaken this time each year to preserve the Club's going concern value and to show lenders, creditors and potential purchasers the Club has numerous active, repeating members.  Provisions are in place and incorporated herein to ensure the safety and proper use of any and all monies collected for the 2027 season.  The steps being taken under this Plan are being done in conjunction with setting the groundwork for a successful opening and conducting of the 2027 season.

Prior to the Petition Date, the Debtors and Boardwalk Empire were in contract to sell the Club's Assets and the Lot for $31,500,000.  Separately, the Property alone was appraised in January 2026 for $19,600,00.00, before factoring in the additional going concern value of NYBC's tangible and intangible personal property, including its good will value, and not including the Lot. Thus, the Debtors anticipate that the real property alone will sell for a price, after paying any commissions to the Broker, in excess of the total amount of projected administrative expenses and

3

scheduled and filed creditor claims, inclusive of any reserves that will be necessary for the Debtors' claims objections, including to the claims of 1751 Ocean and Newtek.

At this time, it is the Debtors' plan to sell the Club Assets (the "Sale") through this Plan and have retained a real estate advisor, Northgate Real Estate Group, LLC (the "Broker"). A hearing to retain the Broker was held by the Bankruptcy Court on July 23, 2026, with the Court approving that retention, subject only to the submission of an order approving that retention. A proposed order is in the process of being submitted to the Bankruptcy Court.

Included in the proposed Sale, Boardwalk Empire will be offering to sell the Lot as part of a package of assets including the Club Assets. The Broker is promptly commencing a national marketing campaign for the Club Assets which will include marketing reports to the Debtors, 1751 Ocean and the Office of the United States Trustee. The Sale process currently envisions interested parties providing the Debtors and the Broker with any letters of intent by September 30, 2026. An auction, if necessary, will be scheduled to occur on or about November 1, 2026. In all events, the Debtors will require a closing on the Sale to occur no later than on or about January 30, 2027, unless otherwise extended by the Court. In the event the combined sale price for the Club Assets exceeds the total amount of projected Allowed Claims and any necessary reserves for any claims objections by Debtors, it is anticipated that such Sale will be done as a private sale.

The Debtors reserve the right to at any point prior to the closing on the Sale to withdraw the Club Assets from the sale market and reinstate the Loans, should the Debtors and the Lenders come to a consensual, not-litigious resolution on the reinstatement amount on the Loans, or refinance the entirety of the Loans through lenders which have already expressed interest in a refinancing. The Debtors have received letters of intent and term sheets from six (6) different refinance sources and reserve the right to satisfy all creditors through replacement financing if such financing provides creditors with the payment equal to or greater than a sale would provide.

As of July 27, 2026, according to information provided by the Receiver, the Receiver was holding approximately $440,861.00 in his bank accounts, with approximately $413,550.00 in NYBC accounts and $27,350.00 in an Ocean Blvd account, all net of issued and outstanding Receiver checks for payroll, vendors and court-approved professional fees. The Debtors project remaining revenues and expenses for the remainder of the 2026 Season and the winterizing costs in preparing for the 2027 season through December 31, 2026. Those projections for August 2026 through December 2026 are annexed hereto as **Exhibit A[1]** and are in addition to monies remaining from the 2026 season once the 2026 comes to a close in September 2026.

Pursuant to Section 1125 of the Bankruptcy Code, the Debtor is providing the disclosure of relevant information herein such that each creditor entitled to vote on the proposed plan receives adequate information of a kind and in sufficient detail to enable a hypothetical holder of an Allowed Claim against the Debtor to make an informed judgment as to whether to accept or reject the Debtor's Plan. This is a plan of liquidation with the plan payments to be funded from the proceeds of the sale of the Property and any other cash on hand, if any. As explained below, selling

---

[1] The amount projected for "rent" is equal to the monthly mortgage payments on the Loans at the non-default interest rate.

4

the Assets through a sale process managed by the Debtors and the Broker, with Court oversight, is a better alternative than accomplishing such sale through a Chapter 7 liquidation.

**Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. The Assets of the Debtors being sold under this Plan have a sale value far in excess of the total amount of claims asserted against the Debtors. Accordingly, under any sale scenario, creditors holding Allowed Claims will receive no less than what they would otherwise receive in a chapter 7 liquidation. The plan presented herein provides for a liquidation of the Debtor's assets but without the attendant additional costs and expenses that occur in liquidation under chapter 7 because of the presence of a chapter 7 trustee.

A liquidation under chapter 7 is reasonably anticipated to incur additional costs, such as commissions for the trustee based on the total amount of monies disbursed by that chapter 7 trustee to non-debtor persons, and the costs of attorneys and an accountant to gain knowledge of the Debtors and their various issues, which are not occurring in a liquidation through this Plan. With this case involving the sale of a multi-million-dollar parcel of real property, the chapter 7 trustee commissions alone are anticipated to add well in excess of $100,000.00 to administrative costs. Furthermore, a chapter 7 trustee would be a brand new party to this case and come with his own set of professionals who would need to incur additional legal fees getting up to speed on all the various legal issues in these cases.

A liquidation through Chapter 7 of the Bankruptcy Code also presents a substantial risk of decreased value through a decrease or loss of the goodwill value of the Club resulting in a lower sale price.

Accordingly, the Debtors believe that the payment to holders of allowed creditor claims will always be more than what creditors would receive through a chapter 7 liquidation.

**B.      Ability to Make Plan Payments**

The Plan Proponent must show that it will have enough cash to make the required Plan payments. Here, the plan is a liquidating plan, with all cash (i) on hand; (ii) resulting from the sale of the Assets and (iii) from any recoveries from any claims the Debtor may have against other persons will be paid out under the terms of this Plan. Moreover, because this is a liquidation, there will not be any ongoing operations of the Debtor after the closing on the sale of the Assets. Although the Debtors will be paying all of their creditors holding Allowed Claims, the Debtors will not receive a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code. The Debtors do seek a post-Effective Date injunction. *See* Art. 10.3 below.

As detailed in the Projections, the Debtors will have sufficient monies on hand and available to make payments to 1751 Ocean between the entry of the Confirmation Order and the projected Effective Date.

**C.      Creditor Benefits of Proposed Chapter 11 Plan**

5

This Plan proposes to pay all of its creditors holding Allowed Claims 100% of the amounts due to them.  Those creditors include all secured creditors, taxing authorities and general unsecured creditors holding Allowed Claims.  Also creditors would receive payment sooner through a sale or refinancing in Chapter 11 while payments, particularly to unsecured creditors, is likely to be delayed in a liquidation done under Chapter 7.  By selling or refinancing under Chapter 11 the Debtors' operations are preserved setting the Club up for a smooth 2027 season opening.

**Article 1: Summary**

This Plan of Liquidation (the "Plan") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay all of the respective creditors of NEW YORK BEACH CLUB, LTD. and OCEAN BLVD., LLC holding Allowed Claims from cash on hand and thereafter collected, with payment of all allowed administrative expenses to be paid in full and allowed creditor claims to also be paid in full within five (5) business days after the Effective Date or entry of an order approving such expenses or claims, except that the Debtor may pay secured creditors on the Effective Date as part of the closing on the Sale.

This Plan provides for:

 1 class of non-tax priority claims;
 3 classes of secured claims;
 1 class of non-priority unsecured claims
 2 classes of equity interests

The deadline for governmental units holding claims against the Debtor to file a proof of claim is Monday, August 10, 2026, which is the 180[2] day after the Petition Date. The deadline for all non-governmental unit creditors holding claims prior to the Petition Date passed on March 31, 2026.  Between those creditors that timely filed a proof of claim or did not file a proof of claim but were included in the Debtors respective schedules as holding an undisputed, non-contingent, liquidated claim, the Debtor projects the following[3]:

Administrative Expenses:

Professional Fees and Expenses:    $  155,000.00[4]

Receiver Fees and Expenses:    $  75,000.00

Hospitality Management Company: $  25,000.00

---

[2]  The actual 180th day after the Petition Date is Sunday, August 9, 2026.  The deadline is extended to the following non-holiday business day pursuant to Federal Rule of Bankruptcy Procedure 9006(a)(1)(C), which date is Monday, August 10, 2026.

[3]  The foregoing information is for informational purposes only and is not meant to be an admission or acknowledgment by the Debtor.  All filed and scheduled claims remain subject to review an possibly objection by the Debtors.

[4]  This is the projected fees and expenses incurred or anticipated to be incurred by the Debtor to its bankruptcy attorneys as of the date of this Plan, before application of any retainer previously received, with all amounts subject to application to and award by the Court.

10095412.1

|  |  |  |
|---|---|---|
| Broker Commission: | $ | Unknown[5] |
| U.S. Trustee Quarterly Fees | $ | 20,000.00[6] |
| Secured Tax Claims: | $ | 22,495.60 |
| Secured Non-Tax Claims: | | |
| 1751 Ocean, LLC (Loan A): | | $11,250,395.86[7] |
| 1751 Ocean, LLC (Loan B): | | $ 1,188,325.70[8] |
| Total 1751 Ocean LLC Claim: | | $12,438,721.56[9] |
| Newtek Claim: | | $ 3,253,244.52[10] |
| Total Secured Claims: | | $15,691,966.08 |
| Priority Non-Tax Claims: | $ | 0.00 |
| Priority Tax Claims: | $ | 44,964.92 |

[5] The Broker has just been retained by the Debtors and is in the process of completing a market analysis of the Assets for a listing price. The Debtors will file a plan supplement no later than five (5) days prior to the plan objection deadline to update this information.

[6] This amount includes projected quarterly fees from operational disbursements based, in part, on the expenses in the Projections for August and September 2026. Projected quarterly fees from the distribution of creditor Allowed Claims from sale proceeds of the Assets are not yet known because the Broker commissions are not yet projected. The final projected amount will assume (a) that a closing on the Assets provides sufficient funding to pay all creditors' holding Allowed Claims in full; and (b) further assumes that all of those creditor disbursements are made in the same quarter. The Debtors will file a plan supplement no later than five (5) days prior to the plan objection deadline to update this information.

[7] This amount is the amount asserted in the most recent payoff amount provided by 1751 Ocean as of June 8, 2026, which amount has not been accepted or confirmed by the Debtors and remains subject to objection by either or both of the Debtors.

[8] This amount is the amount asserted in the most recent payoff amount provided by 1751 Ocean as of June 8, 2026, which amount has not been accepted or confirmed by the Debtors and remains subject to objection by either or both of the Debtors.

[9] This amount is the amount asserted in the most recent payoff amount provided by 1751 Ocean as of June 8, 2026, which amount has not been accepted or confirmed by the Debtors and remains subject to objection by either or both of the Debtors.

[10] This amount is taken from Newtek's filed proof of claim number 3 (Ocean Blvd.)/121 (NYBC) and remains subject to objection by either or both of the Debtors.

10095412.1

General Unsecured Claims:   $   345,606.15[11]

Total Claims Scheduled by or Asserted
Against the Debtors (including
Administrative Expenses):   $16,380,032.75

Unless otherwise noted, the foregoing creditor claim amounts are taken from either filed proofs of claim or, in the event no proof of claim has been filed, from the Debtor's schedules. **All** creditor claims remain subject to the Debtor's right to object to such claims either prior to confirmation of this Plan, or thereafter in accordance with the Plan's terms on disputed claims. The assignment of a particular claim to a particular class is not an admission or acknowledgment that such classification cannot be changed and the Debtors reserve the right to object to the validity, priority, amount and classification of any and all claims under the provisions of this Plan and the Bankruptcy Code and Bankruptcy Rules.

The projected percentage of the distribution to be made to holders of allowed Class 5 claims would be 100%, plus interest accrued on such amount from the Petition Date through the date the payment is issued at the Federal Judgment Rate in effect as of the Petition Date. Distribution through a confirmed plan of liquidation under chapter 11 is anticipated to provide each holder of an allowed general unsecured claim with no less of a distribution amount than such holders would receive through a liquidation conducted under chapter 7 of the Bankruptcy Code because of the substantial equity in the Assets above the total amount claimed to be owed to the Debtors' creditors in the unlikely event the Debtors are not successful in objecting to the validity or amounts of such claims.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.).**

### Article 2: Classification of Claims and Interests

**2.01 Class 1**   All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). This class includes, but is not limited to, (i) any creditor holding an allowed claim for unpaid wages or benefits earned within 180 days prior to the Petition Date, i.e., on or after August 14, 2025 (*see* Bankruptcy Code §§ 507(a)(3) and (a)(4); and (ii) any deposits placed with NYBC pre-petition for Club membership which have not otherwise been refunded or returned and which have not yet been applied to a 2026 or prior membership (*see* Bankruptcy Code § 507(a)(7)).

---

[11] This amount is for informational purposes only and remains subject to objection by either or both of the Debtors.

| | |
|---|---|
| **2.02 Class 2** | The claims of any governmental unit for unpaid pre-petition real estate taxes to the extent allowed as a secured claim under § 506 of the Bankruptcy Code, which claims are secured against the Property.  The Debtors do not dispute that |
| **2.03 Class 3** | The claim of 1751 Ocean to the extent allowed as a secured claim under § 506 of the Bankruptcy Code, which claim is secured against the Assets.  The Debtors dispute the amounts asserted by 1751 Ocean as being owed either for a reinstatement or a payoff and the Debtors intend to challenge and reserve for such disputed amounts.  All undisputed amounts will be paid on the Effective Date. |
| **2.04 Class 4** | The claim of Newtek to the extent allowed as a secured claim under § 506 of the Bankruptcy Code, which claim is alleged to be secured against the Assets.  The Debtors both dispute that such claim is secured against any of the Assets and more properly belongs in Class 5, subject to any further objections the respective Debtors may have to such claim. |
| **2.05 Class 5** | All non-priority unsecured claims allowed under § 502 of the Bankruptcy Code. |
| **2.06 Class 6** | Membership interests in Ocean Blvd.  As of the Petition Date and currently Jacobson owns 100% of the membership interests in Ocean Blvd. |
| **2.07 Class 7** | Equity interest holders in NYBC.  As of the Petition Date and currently Jacobson owns 100% of the equity interests in NYBC. |

## Article 3:

### Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

### 3.01 Unclassified Claims

Under section § 1123(a)(1), administrative expense claims and priority tax claims are not assigned to any classes.

### 3.02 Administrative Expense Claims

Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan or upon entry of an order of the Court approving such expense claim to the extent such claim requires bankruptcy court approval and has not been approved as of the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Included in those claims shall be a fee and

9

reimbursement of expenses for the professional compensation and reimbursement of expenses for the Debtor's retained counsel and any other retained professional in amounts to be determined by the Court after notice and a hearing.  All awarded fees and expenses for the Receiver will also be paid per subsequent order of the Bankruptcy Court.

### 3.03 Priority Tax Claims

Each holder of a priority tax claim will be paid on account of such claim in cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such claim, plus interest at the rate in effect as of the calendar month in which the plan is confirmed pursuant to I.R.C. Sections 6601 and 6621, in full on the Effective Date.

### 3.04 Statutory Fees and Post-Confirmation Reporting

(a)       All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective Date.

(b)       Subsequent to the Confirmation Date but before the Effective Date, the Debtor shall continue to prepare and file its monthly operating reports by the 20th each following completed month.

(c)       Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety (90) days, the Reorganized shall file all post-Effective Date reports required during such periods and shall pay when due all post-Effective Date fees charged or assessed against the Estates under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|-----------|-----------|

10095412.1

| Class 1 – Priority Claims (excluding those addressed in Article 3 above) | Unimpaired | Class 1 consists of the Allowed Priority (Non-Tax) Claims against the Debtors. Upon the Effective Date of the Plan, in full satisfaction of its Allowed Priority Claim, each holder of an Allowed Priority Claim will be paid in full in cash on the Effective Date.<br><br>Ocean Blvd. believes it has no creditors in this class.<br><br>NYBC believes it has minimal creditors in this class, with no 2026 members having claims against it as of the filing of this Plan.<br><br>Class 1 Claims are unimpaired, and therefore holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan. |
| Class 2 – Secured Claims of Governmental Units | Unimpaired | Class 2 consists of those amounts owed to governmental units for unpaid real estate taxes on the Property, which is an Allowed Secured Claim secured by the Property. Ocean Blvd. believes that there is no current or past due amounts owed to any governmental unit for real estate taxes.<br><br>The anticipated value to be realized from the sale of the Property is far greater than the total possible amount of these Class 2 claims. Accordingly, the Debtor submits that this claim is fully secured, and, if owed, will be paid in full on the Effective Date.<br><br>All governmental units will retain their tax liens, if any, against the Property until such time as such tax liens, if any, are paid and discharged, with those liens attaching to the proceeds of the sale of the Property.<br><br>The Class 2 Claims are unimpaired, and therefore the holders of a Class 2 Claim are not entitled to vote to accept or reject the Plan and are deemed to accept it. |

11

| Class 3 – Secured Claim of 1751 Ocean | Unimpaired | Class 3 consists of such amount owned to 1751 Ocean, filed as Claim No. 112, which is or becomes an Allowed Secured Claim secured by the Assets. Ocean Blvd. has been making Section 362(d)(3) monthly payments to 1751 Ocean which will be applied to the amounts owed to it under the Loans. |
|---|---|---|
| | | 1751 Ocean will retain its mortgage liens, any other liens granted and perfected under the Loans and any liens granted under the Cash Collateral Order against the Assets, with those liens attaching to the proceeds of the Sale of the Assets. |
| | | 1751 Ocean asserts that it is owed a total of $12,438,721.56 as a payoff amount through June 8, 2026. It is currently anticipated that the closing on the Sale of the Assets will occur on or about January 31, 2027. |
| | | Upon a closing of the Sale of the Assets, assuming that the amount of proceeds from such Sale is greater than the total secured claim of 1751 Ocean, it shall be paid from such proceeds on the Effective Date. In the event the Debtors file any objection to the claims of 1751 Ocean prior to the Effective Date, the Debtors will reserve the amount necessary to pay the disputed amount of 1751 Ocean's claim required under Section 5.03; and pay to 1751 Ocean on the Effective Date all amounts not in dispute. |
| | | The Debtors believe that the value of the Assets far exceeds the total amount of this claim. The Debtors anticipate closing on the sale after entry of an order confirming this Plan, with this claim being satisfied in full at such closing, subject only to Section 5.03. |
| | | Between the entry of the Confirmation Order and the closing on the Sale, the Debtors will pay to 1751 Ocean a monthly payment in the amount of $54,167.00 commencing on the fifth (5th) day after entry of the Confirmation Order and every month thereafter until such time as 1751 Ocean's Allowed Claim is paid in full or the Loan is |

12

| | | reinstated which will be applied to the amounts owed to it under the Loans. The Class 3 Claim is unimpaired, and therefore the holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan and is deemed to accept it. |
|---|---|---|
| Class 4 – Alleged Secured Claim of Newtek | Unimpaired | Class 4 consists of that amount, if any, of the claim of Newtek, filed as Claim No. 121, which is a claim that the Debtors dispute is actually secured, and to which the Debtors have additional defenses.  To the extent this claim is found to be a valid secured claim, the holder would retain any liens they prove against the Assets, with those liens attaching to the proceeds of the sale of the Assets. The Debtor believes that the value of the Assets far exceeds the total amount of this claim.  The Debtor anticipates closing on the sale after entry of an order confirming this Plan.  However, this claim will not be satisfied at closing and will not be paid unless and until such claim is found to be an Allowed Claim. If such claim is found to not be validly secured, such claim will be treated as a Class 5 claim, subject to further objection. Because the value of the Assets far exceeds the total amount of claims asserted against the Debtors, the Class 4 Claim is unimpaired, and therefore the holder of the Class 4 Claim  is not entitled to vote to accept or reject the Plan and is deemed to accept it. |

13

| Class 5 – Non-priority unsecured creditors | Unimpaired | Class 5 consists of the Allowed General Unsecured Claims against the Debtor. Upon the Effective Date of the Plan, in full satisfaction of its Allowed General Unsecured Claim, (i) on the Effective Date, or as soon as possible after the closing on the Sale of the Property, the Debtor shall pay such Allowed Claims in full, in cash, with interest from the Petition Date to the date of issuance of the payment at the Federal Interest Judgment Rate in effect as of the Petition Date.<br><br>The Debtors are projecting a Distribution to the holders of Allowed Claims in this Class 5 to be 100%, plus interest.<br><br>Class 5 Claims are unimpaired, and therefore holders of Class 5 Claims not entitled to vote to accept or reject the Plan and are deemed to accept it. |
|---|---|---|
| Class 6 – Member Interests in Ocean Blvd. | Unimpaired | The holders of the membership interests in Ocean Blvd. shall retain such interests but shall not receive any distributions on account of same unless and until all holders of Allowed Claims against the Debtor have been paid in full. Class 6 is unimpaired, and therefore holders of Class 6 Interests are not entitled to vote to accept or reject the Plan and are deemed to accept it. |
| Class 7 – Member Interests in Ocean Blvd. | Unimpaired | The holders of the equity interest in NYBC shall retain such interests but shall not receive any distributions on account of same unless and until all holders of Allowed Claims against the Debtor have been paid in full. Class 6 is unimpaired, and therefore holders of Class 6 Interests are not entitled to vote to accept or reject the Plan and are deemed to accept it. |

14

## Article 5: Allowance and Disallowance of Claims

### 5.01 Disputed Claims

A "Disputed Claim" is a claim that has not been allowed or disallowed by a final non-appealable order, <u>and</u> as to which a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection.

### 5.02 Objections to Disputed Claims

Objections to Claims, to the extent not already filed by the Debtor, must be filed and served by the Debtor no later than the ninetieth (90th) day after the Effective Date (or the next business day if the 90th day is a holiday or weekend day) (the "Claims Objection Deadline").  The Debtors reserve the right to seek to extend the existing Claims Objection Deadline which deadline, if an application to extend is filed with the Bankruptcy Court prior to the expiration of the existing Claims Objection Deadline, will automatically be extended to the first business day after the Court has entered an order granting or denying the requested extension unless such order provides for a different deadline.

### 5.03 Reserves for Disputed Claims

In the event the Debtor objects to any claims, it shall hold in reserve (a) 110% of any Disputed Claim amount subject to an objection until such Disputed Claim is resolved by a Final Order or settled.  Should the amount reserved by the Debtor on account of the Disputed Claim exceed the amount required to satisfy the Disputed Claim, any excess will be distributed in accordance with the Plan.

### 5.04 Delay of Distribution on a Disputed Claim

(a)  No distribution will be made on account of a Disputed Claim unless such claim is settled between the parties or Allowed by a final non-appealable order.

(b)  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Debtor shall within fifteen (15) days after the later of (x) the date on which the Claim becomes an Allowed Claim; and (y) when claims in the same Class are paid, or as soon thereafter as is practicable, pay to the Holder of such Allowed Claim the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

### 5.05 Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise any disputed claim by either stipulation to be "So Ordered" by the Court or, where necessary, with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

10095412.1

**6.01 Assume Executory Contracts and Unexpired Leases.**

(a)        NYBC assumes the following executory contracts and unexpired leases as of the Effective Date:

Lease with Ocean Blvd. for the Property.

(b)        Except for executory contracts and unexpired leases that have been assumed under Section 6.01(a) or (c) herein, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

(c)        Notwithstanding Section 6.01(b) above, if any contract or unexpired lease has a month-to-month or other termination clause contained therein, such contract or unexpired lease shall be, at the sole and complete discretion of the Debtor contract-counterparty, assumed and thereafter terminated according to the language of such contract or lease or applicable non-bankruptcy law for the termination of month-to-month contracts or leases.

(d)        A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Effective Date.

**6.02    Cure Payments**.

To the extent an executory contract or unexpired property or personal property lease listed under section 6.01(a) of this Plan was in a monetary default or otherwise had an amount due under such contract or lease as of the Petition Date, such monetary amount(s) owed shall be paid on the Effective Date of the Plan, or in accordance with any other agreement as between the Debtor and the contract or lease counterparty.

The Debtors believe they are current or will be current on or before the Effective Date on all executory contracts or unexpired property or personal property leases which it will be assuming under this Plan.

**Article 7: Means for Implementation of the Plan**

**7.01 Funding of Plan.**

The distributions to the creditors holding Allowed Claims against the Debtor that are to be made on and after the Effective Date under this plan shall be funded from cash on hand, the net proceeds of the Sale of the Assets, after all ordinary course closing costs are calculated and paid, and the recovery of any additional monies from pending or future litigations.

**7.02 Treatment of 2027 Season Membership Fees and Deposits**

(a)        Any and all monies collected prior to the Effective Date for the 2027 season membership deposits ("2027 Membership Deposits") shall be held in segregated operating

accounts, accounted for separately, used only for ordinary course operations and preservation for the 2027 season including, but not limited to, payments to 1751 between the Confirmation Date and the Effective Date.  Such funds shall remain subject to Court oversight until the Plan has been substantially consummated.

(b)     All 2027 Membership Deposits remain subject to the terms of each person's 2027 Membership Agreement, which includes the ability to receive a refund if requested prior to January 1, 2027.

(c)     In the event the Sale of NYBC assets is consummated, NYBC will transfer or credit the at the closing on the Sale a sum equal to the full amount of 2027 Membership Deposits collected by NYBC between August 1, 2026 and the day immediately prior to the closing on the Sale.

### 7.03 Reservation of Rights on Debtor Causes of Action

The Debtor reserves its rights to prosecute all Causes of Action it may have, if any, with such rights vesting in the Reorganized Debtors upon the Effective Date.  Such Causes of Action include, but are not limited to, any and all claims against Carver and/or 1751 Ocean concerning the Loans.

### 7.04 Issuance of Deed.

(a)     In the event that the closing on the Sale of the Property has not occurred as of the date of entry of the Confirmation Order, upon such closing occurring thereafter, the delivery of such deed transferring title of the Property to the purchasers shall occur under this Plan.  As a result, the proceeds to be derived from the Sale are necessary to the consummation of this Plan and such proceeds will facilitate the implementation of this Plan.

(b)     In the event that a deed transferring title to the Property occurs under this Plan pursuant to Section 7.04(a) above, Ocean Blvd. shall have the right to the protections granted under Section 1146(a) of the Bankruptcy Code concerning any law imposing a stamp tax or similar tax, e.g., seller obligated transfer tax.

17

**7.05 Reservation of Rights to Reinstate or Refinance Loans**

(a)  The Debtors reserve the right to withdraw the Assets from sale and instead reinstate or refinance the Loans on the Effective Date.

(b)  In the event the Debtors decide to reinstate or refinance the Loans, in order to reinstate or refinance the Loans, the Debtors shall have on hand immediately prior to the Effective Date, an amount of cash necessary to pay the full amount of such reinstatement or refinance as asserted by 1751 Ocean, provided, however, that in the event the Debtors dispute the amount asserted by 1751 Ocean for such reinstatement or refinance, (i) the Debtors will have commenced an objection to the 1751 Ocean claim prior to the Effective Date; (ii) reserve the amount necessary to pay the disputed amount required under Section 5.03; and (iii) pay to 1751 Ocean on the Effective Date all amounts not in dispute.

**7.06 Require Compliance with Section 543(a) and (b)**

The Confirmation Order shall include a provision terminating the excusing of the Receiver from complying with all obligations under Section 543(a) and (b) with the Receiver required to turn over to the Debtors within five (5) business days after the Confirmation Order becomes final and non-appeals, among other things, any and all monies held by the Receiver as of the Effective Date.  To the extent the Receiver is holding any 2027 Membership Deposits, such turnover shall include any and all 2027 Membership Deposits, subject to Article 7.02 above.  Furthermore, by motion to be returnable the same day as the confirmation hearing on this Plan, the Debtors will seek to terminate the services of Polaris as no longer necessary.

**7.07 Obligation to Provide Tax Documents**

No Person entitled to a payment or distribution under the Plan shall receive such distribution or payment until the Person provides the Reorganized Debtor with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Reorganized Debtor (collectively the "Tax Forms").  If any Person holding an Allowed Claim fails to provide a Tax Form to the Reorganized Debtor making such distribution after two written requests for a Tax Form, such Person's Allowed Claim shall be disallowed and expunged without further order of the Bankruptcy Court.

## Article 8: General Provisions

**8.01 Definitions and rules of construction.**

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

"2027 Membership Deposits" shall have the same meaning as provided for in Section 7.02(a) of this Plan.

"Allowed" or "Allowed Claim" means any Claim against or Interest in a Debtor that is scheduled by or on behalf of such Debtor as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Court and, in either case, a Claim (a) as to which no objection has been interposed within ninety (90) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Court or as settled by the parties.

"Bankruptcy Code" means title 11 of the United States Code (11 U. S.C. §§ 1101, et seq.).

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Filing Date and as amended after the Filing Date and during the Debtor's chapter 11 case.

"Causes of Action" means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to each of the Debtors or their respective Estates and any and all liabilities, obligations, covenants, undertakings and debts owing to such Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity or otherwise. Causes of Action can and may include any and all claims for, among other things, insurance proceeds, lender liability, breach of contract, equitable subordination, surcharge, offsets, professional negligence, and avoidance actions under Chapter 5 of the Bankruptcy Code.

"Claim" means any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

"Confirmation Date" means the date on which the Court enters an order confirming this Plan.

"Court" means the United States Bankruptcy Court for the Eastern District of New York.

"Disbursing Agent" means each of the Reorganized Debtors.

"Disputed Claim" shall have the same meaning as provided for in Section 5.01 of this Plan.

"Effective Date" shall have the same meaning as provided for in Section 8.02 of this Plan.

"Final Order" means an order of a Court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

10095412.1

Case 8-26-70576-las    Doc 136    Filed 07/27/26    Entered 07/27/26 22:51:01

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

"Pro Rata Distribution(s)" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all Allowed Claims in such class.

"Reorganized Debtor" means each of the respective Debtors on and after the Effective Date.

## 8.02 Effective Date of Plan

(a)     The effective date (the "Effective Date") of this Plan is the later of (i) the first business day following the date that is 14 days after the entry of the confirmation order; or (ii) the closing on the sale of the Assets.  If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

(b)     Within seven (7) days after the Effective Date, the Reorganized Debtor shall file and serve via first class mail on all known creditors and parties in interest a notice of the Effective Date.

## 8.03 Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 8.04 Binding Effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## 8.05 Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 8.06 Controlling Effect

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## 8.07 Retention of Jurisdiction

10095412.1

Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the Final Decree has been entered closing both of the Chapter 11 Cases, the Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Court shall retain jurisdiction for the following purposes:

(a) to consider any modification of the Plan pursuant to § 1127(b) of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b) To hear and determine:

    (i)    all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

    (ii)    all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

    (iii)    all rights or Causes of Action which may exist on behalf of the estates as well as any actions commenced to recover preferential transfers and other property of the estate;

    (iv)    applications for allowance of compensation and expense reimbursement of the Debtors' Professionals for periods prior to the Effective Date;

    (v)    any and all applications, adversary proceedings and litigated matters;

    (vi)    to enter a final decree closing each of the Chapter 11 Cases; and

    (vii)    to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

## 8.08 Remedy Upon Default in Making Plan Payments

In the event any payment required pursuant to the Plan is more than thirty (30) days overdue, the party which has not received payment retains the right to request that the case be converted to a case under chapter 7 of the Bankruptcy Code or dismissed if such default is not cured. If the Debtor does not cure the default within thirty (30) days after being notified that it is in default, creditors are entitled to seek relief from the Court to compel payment or convert or dismiss the case. This provision survives the confirmation of the Plan, and creditors are entitled

21

to enforce this provision post-confirmation. The Court retains jurisdiction to enforce this provision of the Plan.

**8.09 Vesting of Assets**

Pursuant to section 1141(c), as of the Effective Date, all property of each of the Debtors' respective estates will vest in the respective Reorganized Debtor if not yet sold and any and all Causes of Action, free and clear of any and all liens, debts, obligations, claims, liabilities, and all other interests of every kind and nature, except for the Plan Obligations, including, but not limited to, any and all liens continued by and/or granted in this Plan, and as otherwise provided under this Plan and the Confirmation Order.

## Article 9: Discharge

**9.01 Discharge.**  As each of the Debtors are a corporation for purposes of the Bankruptcy Code and this is a liquidating plan, neither of the Debtors will receive a discharge in accordance with § 1141(d)(3) of the Bankruptcy Code except to the extent each of the creditors holding claims against either or both of the Debtors are paid in full or have had their respective claims disallowed.

## Article 10: Other Provisions

**10.01 Deadline to File Fee Applications.** All retained professionals of the Debtors, and the Receiver, shall file their respective fee application no later than thirty (30) days after the Effective Date.

**10.02 Injunction. UNLESS AND UNTIL THE OCCURRENCE OF THE EFFECTIVE DATE, THE AUTOMATIC STAY IMPOSED UNDER SECTION 362 OF THE BANKRUPTCY CODE SHALL REMAIN IN EFFECT.  EFFECTIVE ON THE EFFECTIVE DATE, ALL CREDITORS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST EITHER OR BOTH OF THE DEBTORS OR THEIR RESPECTIVE ASSETS ARE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST OR AFFECTING EITHER OF THE DEBTORS OR THE ASSETS OF THE RESPECTIVE DEBTORS WITH RESPECT TO SUCH CLAIMS (OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THIS PLAN OR APPEALS, IF ANY, FROM THE CONFIRMATION ORDER): (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST EITHER OR BOTH OF THE DEBTORS OR THE ASSETS OF THE RESPECTIVE DEBTORS; (II) ENFORCING, LEVYING, ATTACHING, COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST EITHER OR BOTH OF THE DEBTORS OR THEIR RESPECTIVE ASSETS; (III) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST THE EITHER OR BOTH OF THE DEBTORS OR THE RESPECTIVE ASSETS OF THE DEBTORS; (IV) ASSERTING ANY SET-OFF, RIGHT OF SUBROGATION OR**

10095412.1

**RECOUPMENT OF ANY KIND DIRECTLY OR INDIRECTLY AGAINST ANY OBLIGATION DUE THE EITHER OR BOTH OF THE DEBTORS OR THEIR RESPECTIVE ASSETS; AND (V) PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THIS PLAN AND THE CONFIRMATION ORDER.**

**10.03 Limitation on Liability.** The Debtors and their retained professionals shall have or incur no liability for conduct occurring during the period commencing from the entry of the order for relief in this case to the Effective Date to the extent allowed under § 1125(e) of the Bankruptcy Code and not otherwise excluded below and, in all respects, the Debtors and their retained professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in the Plan shall limit the liability of the retained professionals of the Debtor for malpractice to their client pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1) nor release any party for any claims of fraud, ultra vires acts, gross mismanagement, or willful misconduct. Additionally, the Plan shall not release or exculpate any person or entity from any Claims or Causes of Action existing as of the Effective Date (i) based on the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

**10.4 Tax Consequences of Plan**. **CREDITORS AND INTEREST HOLDERS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) TO THEM OF THE PLAN. THE PROPONENTS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR INTEREST HOLDER, NOR ARE THE PROPONENTS RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.**

Respectfully submitted,

NEW YORK BEACH CLUB, LTD.

___/s/Alexander Jacobson_____
Alexander Jacobson
President

OCEAN BLVD., LLC

___/s/Alexander Jacobson_____
Alexander Jacobson
Managing Member

23

10095412.1

CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Debtors and Debtors in Possession


   /s/Robert D. Nosek           
Richard J. McCord, Esq.
Robert D. Nosek, Esq.
90 Merrick Avenue
East Meadow, New York 11554
(516) 296-7171

24